Filed 12/3/24  P. v. Jimenez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C100123 |
| Plaintiff and Respondent, | (Super. Ct. No. CR-2014-3525) |
| v. | |
| SALVADOR JIMENEZ, | |
| Defendant and Appellant. | |

In 2014, a jury found defendant Salvador Jimenez guilty of four counts of second degree robbery and one count of attempted second degree robbery; the trial court then sentenced him, under the Three Strikes law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12),[1] to an aggregate term of 110 years to life in state prison.  In 2022, the Secretary of the Department of Corrections and Rehabilitation (Secretary of CDCR) sent a letter to the

---

[1]    Undesignated section references are to the Penal Code.

trial court recommending that defendant's sentence be recalled and that he be resentenced. The trial court recalled defendant's sentence and, after a hearing, reimposed the same sentence as was originally imposed.

On appeal, defendant argues that the trial court abused its discretion in (1) declining to resentence him to a sentence proportionate to the seriousness of his offenses, (2) refusing to strike one or both of his prior strikes, and (3) declining to dismiss his two five-year prior serious felony enhancements. He further asserts that (4) the trial court erred in failing to prepare an amended abstract of judgment updating his actual custody credits. We will direct the trial court to prepare an amended abstract of judgment reflecting defendant's updated custody credits. We otherwise will affirm.

BACKGROUND

*Defendant's 2014 Trial and Sentencing*

For context, we provide facts from our unpublished opinion in defendant's appeal from the judgment, pertaining only to those counts on which defendant was found guilty. (*People v. Jimenez* (Sept. 23, 2015), C077694) [nonpub. opn.].)[2]

"On July 7, 2014, [M.O.] was working at [a yogurt shop] . . . in Woodland when a man came into the store wearing a hat and sunglasses, with a piece of paper covering his mouth. He came up to the counter, told [M.O.] to give him the money, and said he had a gun. His left hand was in his pocket, and there was something bulky inside. She removed about $300 from the cash register, and the man took it and fled on a bike. . . .

[¶] . . . [¶]

"On July 10, 2014, [T.M.] and [L.L.] were working together at [a beauty supply store] . . . in Woodland when a man came into the store wearing a baseball cap and sunglasses, with a paper towel covering his mouth. He had a zippered pouch under his

---

[2]     We granted the People's request to incorporate by reference the record from defendant's previous appeal.

2

arm. He came up to the counter and said, 'I'm going to make this short but sweet . . . give me the money.' He told them he had a gun and pulled out the gun half way from the zippered pouch. [T.M.] and [L.L.] quickly took out a little less than $200 and handed it to the man. . . .

[¶] · · · [¶]

"On July 16, 2014, [M.T.] was working at [a pizza restaurant] . . . in Woodland when a man came into the store wearing a baseball cap, sunglasses, and a medical mask and told her to empty the register or he would pull out a gun. She emptied the register and gave the man about $155, and the man fled on a bike. . . .

[¶] · · · [¶]

"On July 18, 2014, [F.O.] was working at [a fast food restaurant] . . . in Woodland when a man came into the restaurant wearing a cap, dark glasses, a cup lid covering his mouth, and holding a pouch in his hand. The man said she needed to open the cash register and if she didn't, he was going to pull a gun on her. [F.O.] responded that she needed to take some tacos out of the oven or they would burn, told him to stay, and then she went back to see her manager. He stayed for about three minutes and then left the restaurant. . . ." (*People v. Jimenez, supra*, C077694).)

A 2014 information charged defendant with six counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 1, 3-7) and one count of attempted second degree robbery (§§ 21a, 211, 212.5, subd. (c), 213, subd. (b); count 2). The information alleged defendant had two prior strike convictions (§ 667, subds. (b)-(i)), two prior serious felony convictions (§ 667, subd. (a)(1)), and that he had served a prior prison term for a violent felony (§ 667.5, subds. (a), (c)).

A jury found defendant guilty of four counts of second degree robbery and one count of attempted second degree robbery. The trial court sentenced defendant to an aggregate term of 110 years to life consisting of consecutive terms of 25 years to life on counts 2, 3, 5, and 7, plus two five-year terms for his section 667, subdivision (a) prior

3

serious felony enhancements.  The trial court imposed a concurrent term of 25 years to life on count 6 and imposed and stayed the term for the section 667.5 prior prison term enhancement.

*Defendant's Motion for Recall and Resentencing*

In 2022, the Secretary of CDCR sent a letter to the trial court recommending that defendant's sentence be recalled and that he be resentenced.  Months later, defendant filed a motion for recall and resentencing pursuant to section 1172.1, including requests that the trial court strike his strike priors (see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*)), and his two five-year prior serious felony enhancements (§ 667, subd. (a)(1)).

With his petition, defendant submitted the letter from the Secretary of CDCR and its attachments, including a case summary.  The case summary detailed defendant's criminal and parole history; indicated that he had not tested positive in four random drug tests; stated he had no pending disciplinary actions and that he had remained discipline-free while incarcerated; and detailed defendant's work history and favorable performance reviews while incarcerated.  It also noted programs and educational pursuits in which defendant has participated.

Defendant also submitted a "social history," detailing his background.  Topics covered included his childhood, his parental abandonment, and his history of drug use.  According to the social history, the childhood trauma of parental abandonment increased his vulnerability to addiction.

Additionally, defendant submitted an analysis by a client advocate including defendant's release plan.  Defendant's Static Risk Assessment score on a scale of one to five was one, indicating the lowest risk to reoffend.  His Correctional Offender Management Profiling for Alternative Sanctions or COMPAS dynamic risk assessment also indicated he was a low risk in all respects with the exception of substance abuse, for which he was characterized as a high risk.  The analysis detailed defendant's success at

maintaining his sobriety for nine years while incarcerated and his plan for continuing to do so upon his release. The analysis also stated that defendant's supervisor at the canteen where he worked had stated that defendant " 'displayed exceptional work performance, punctuality, and leadership ability in every area of his assignment,' " and that "due to his 'strong work ethic, positive attitude, leadership ability, and conformity to established rules and guidelines,' . . . 'he should be considered an asset in any employment situation within or out of prison.' " The client advocate stated defendant had high levels of family support, and he intended to reside in parole-funded housing or with his mother upon release.

Finally, defendant submitted letters in support from his mother, his sister, a teacher at the Tulare Lake Adult School located at the substance abuse treatment facility in the prison, and defendant's work supervisor.

*The Recall and Resentencing Hearing*

The trial court began the resentencing hearing by stating that it had "read the ample and very helpful briefing," but wanted to hear further argument.

Defense counsel emphasized defendant's childhood trauma resulting from parental abandonment and neglect which led to his "serious drug addiction in adulthood." Defense counsel argued that defendant's drug addiction directly contributed to the commission of his prior and current offenses. Defendant had not used any drugs since his arrest in 2014 and had not tested positive in random drug testing in prison. He also had not had a rule violation in nine years of incarceration. His static risk assessment score was the lowest possible and he was at the lowest security level possible given the nature of his offenses. Defendant earned praise in his work assignments. Defense counsel argued that defendant was not a public safety risk. Defense counsel also argued that, at age 57, defendant presented a drastically reduced risk to public safety.

The trial court steered the discussion to defendant's request to strike his strike priors and why he did not come within the spirit of the Three Strikes law. Defense

5

counsel argued that defendant's adult criminal record was "relatively minimal" and no one was hurt in the robberies. She emphasized he used a fake gun, if anything, in the robberies. She also argued that defendant's drug addiction fueled his criminal acts.

The People argued that defendant had a serious criminal history involving numerous robberies and that he came within the spirit of the Three Strikes law. The People emphasized that, in one prior strike, defendant brandished a knife. In the current offenses, he committed a "string of crimes; multiple businesses, multiple victims, and multiple days." The People argued that what defendant had accomplished postconviction "falls short." The People also questioned the causal connection between defendant's childhood trauma and drug addiction and the robberies.

*The Trial Court's Determination*

The trial court ruled: "I think this is a very challenging case. . . . Defendant is really to be applauded for his postconviction factors, . . . to use the language from Penal Code, § 1172.1. . . . [C]learly he's addressing his substance abuse, clearly he's doing a lot of other things that I won't get into and that I think is clear from the record, that I think . . . really worked greatly in his favor of those factors. [¶] That being said, this is why this is such a challenging case, is I think his sentence falls squarely in the spirit of the three strikes law . . . for the reasons I think that the People articulate in that . . . the prior strikes are both robberies, and that he committed this string of robberies . . . in July of 2014 while he was paroled . . . for a robbery charge. So I think that that is something that . . . the Court is also considering, and that . . . , when you think about [*Romero, supra*, 13 Cal.4th 497] and you think about . . . whether the sentence is warranted. [¶] . . . [T]his Court does believe that considering all of the factors in its discretion and interest of justice, it is not going to disturb the sentence that was handed down. It is going to keep it. I believe that that is appropriate based on what I've heard here. And I say that understanding, again, that the Defendant has been doing quite a bit . . . in prison, and I do really applaud him for that, and I don't take that decision lightly. But . . . the

6

Court does believe that that sentence is appropriate, and although I do appreciate the motion and the Defendant's position, the sentence shall remain."

DISCUSSION

I

*Reimposing the Same Sentence*

Defendant argues that the trial court abused its discretion in resentencing him because the sentence imposed is disproportionate to the seriousness of his offenses.  He asserts the trial court did not give serious consideration to any postconviction factors which showed a greatly reduced risk for future violence.  He also argues that his psychological and childhood trauma led to a substance use disorder which contributed to the commission of his offenses.  We conclude that the trial court did not abuse its discretion.

Upon the recommendation of the Secretary of CDCR, the trial court may "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced . . . provided the new sentence, if any, is no greater than the initial sentence."  (§ 1172.1, subd. (a)(1).)  Where resentencing is recommended, the "presumption favoring recall and resentencing of the defendant" in section 1172.1, subdivision (b)(2) "is intended to apply to the initial determination of whether to grant a request to recall and resentence, but . . . the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption."  (*People v. Braggs* (2022) 85 Cal.App.5th 809, 820.)

"We review the trial court's decision whether to recall a defendant's sentence for an abuse of discretion."  (*People v. McCallum* (2020) 55 Cal.App.5th 202, 211.)  We also review the trial court's discretionary sentencing decisions for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374-375 (*Carmony*).)  In reviewing for an abuse of discretion, we "examine[] the ruling of the trial court and ask[] whether it

7

exceeds the bounds of reason or is arbitrary, whimsical or capricious." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

"In recalling and resentencing pursuant to [section 1172.1], the court shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice. . . .  The court shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, . . . and whether those circumstances were a contributing factor in the commission of the offense."  (§ 1172.1, subd. (a)(5).)

As discussed *ante*, defense counsel emphasized defendant's childhood trauma resulting from parental abandonment, which led to defendant's "serious drug addiction in adulthood."  Counsel also argued that defendant's drug addiction directly contributed to the commission of his prior and current offenses and emphasized defendant's sobriety, stating that he had not used drugs since his arrest in 2014.  She discussed defendant's favorable work performance reviews and his low-risk assessment and security level ratings.  Additionally, she emphasized that, at age 57, defendant was a low risk to public safety.

After argument concluded, the trial court referred to these postconviction factors, praised defendant for addressing his substance abuse problems, and added that defendant was "doing a lot of other things . . . that . . . really worked greatly in his favor of those factors."  The court later emphasized again that defendant "has been doing quite a bit . . . in prison, and I do really applaud him for that . . . ."

Ultimately, however, the trial court found that defendant's case fell squarely in the spirit of the Three Strikes law and reimposed the original sentence.  The court relied on

the fact that defendant's "prior strikes are both robberies, and that he committed this string of robberies . . . in July of 2014 while he was paroled . . . for a robbery charge." The court determined that reimposing the same sentence was "appropriate based on what I've heard here." The court concluded that it "does believe that that sentence is appropriate . . . ."

The parties' submissions and arguments and the trial court's remarks plainly establish that the court did consider defendant's position and weighed the appropriate factors in resentencing him. Defendant's contention that the court did not give "serious consideration" to any postconviction factors is belied by the record. Other than detailing the postconviction factors he claims the court failed to seriously consider and asserting that his trauma and addiction contributed to the commission of his offenses, defendant does not otherwise articulate any argument as to how his sentence was an abuse of discretion as disproportionate to the seriousness of his offenses.

" '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law,' " a reviewing court " 'shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Carmony, supra*, 33 Cal.4th at p. 378.) Here, we cannot characterize the trial court's determination as exceeding the bounds of reason or as arbitrary, whimsical, or capricious. (See *People v. Jackson*, *supra*, 128 Cal.App.4th at p. 1018.)

II

*Prior Strike Convictions*

Defendant argues the trial court abused its discretion in declining to strike one or both of his prior strike convictions. He asserts the trial court gave no weight to the factors that indicated a lesser sentence would be appropriate.

Under *Romero, supra*, 13 Cal.4th 497, a trial court has discretion under section 1385, subdivision (a) to strike a prior serious and/or violent felony conviction when the defendant falls outside the spirit of the Three Strikes law. (*People v. Williams* (1998)

9

17 Cal.4th 148, 160-161.) In considering whether to strike one or more prior strike convictions, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.)

We review a trial court's refusal to strike a prior strike conviction for abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 374.) It " 'is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Id*. at p. 378.) A " 'trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*Id*. at p. 377.)

Defendant's first prior strike conviction was a 1996 second degree robbery, in which he entered a Woodland business, showed the handle of what appeared to be a gun, demanded and obtained money from an employee, and fled. He pled guilty to second degree robbery and was placed on probation. His second prior strike was a 1998 conviction of second degree robbery, committed while he was on probation. In this instance, a department store's loss prevention officer discovered that defendant had cut off part of a shoe. When the loss prevention officer followed defendant outside the store, defendant brandished a knife. Defendant was found guilty of, among other things, two felony counts of second degree robbery, and felony possession of methamphetamine, and was sentenced to a term of 16 years four months in prison. Defendant was released to parole supervision in 2011 and discharged from parole in 2012.

Defendant's present felonies include four second degree robbery counts and one attempted second degree robbery. In each of the robberies, defendant entered a business with sunglasses on and his face concealed, indicated he had a gun, demanded and

10

received money, and fled. (*People v. Jimenez, supra*, C077694).) In one case, he partially drew what appeared to be a gun from a pouch. (*Ibid*.) Defendant followed the same pattern in the fast food restaurant but, because he left without taking any money, this resulted in an attempted robbery conviction. (*Ibid*.) When defendant was arrested, he had in his jacket "a black toy gun that looked like a real semiautomatic handgun." (*Ibid*.)

Here again, defendant emphasizes his parental abandonment, the drug addiction that followed, and his contention that his addiction contributed to his offenses. He argues that he had been using methamphetamine since he was 20 years old, he was transient for the month preceding his arrest, and he was using methamphetamine every other day at that time, but has been sober since his arrest in 2014 and has not had a serious rules violation, had participated in programs, and has high levels of family support.

Contrary to defendant's contention that the trial court gave these factors insufficient weight, the record establishes that the court considered them. These factors were addressed in the parties' submissions, emphasized at the hearing, and the court commented on them more than once in rendering its decision.

Defendant relies on *People v. Avila* (2020) 57 Cal.App.5th 1134, in which the Court of Appeal determined that the trial court abused its discretion by denying the defendant's *Romero* motion. (*Id*. at pp. 1138-1139, 1140.) *Avila* concluded that the trial court failed to consider the remoteness of the defendant's prior strikes, which were 28 and 26 years old. (*Id*. at p. 1141.) The Court of Appeal also emphasized that the defendant committed his prior strikes when he was under the age of 21 and noted the "increasing recognition that young adults are constitutionally different from adults for sentencing purposes . . . ." (*Id*. at pp. 1141-1142.) The Court of Appeal disapproved of the trial court's characterization of the current offenses as "violent" and "brutal," stating: "When the victims refused to give [the defendant] money, he destroyed several bags of oranges and left. While we do not make light of this intimidating behavior, it was not

11

violent or brutal by any stretch. [The defendant] did not use a weapon or otherwise use physical violence against the victims, nor did he make any specific threats. He squashed oranges." (*Id*. at p. 1142.) Additionally, the Court of Appeal noted that the defendant had "not committed a violent felony since his strike offenses, showing that the severity of his record is decreasing." (*Id*. at p. 1143.) The Court of Appeal concluded: "Despite the trial court's characterization of the facts, [the defendant's] current offenses were not violent and, on the spectrum of criminal behavior, fall closer to the end of less reprehensible conduct. Much of his criminal conduct appears to be related to his drug addiction rather than to sinister motives and falls well outside the realm of what could be considered the work of a career criminal." (*Id*. at p. 1145.)

This case is distinguishable in numerous respects. At the time of his current offenses, defendant's prior strike convictions, while remote, were not as remote as those in *Avila*, approximately 16 and 18 years earlier, and defendant was incarcerated for 12 of the intervening years. Defendant's prior strikes also were not committed when he was a youth. And defendant's current offenses are categorized as violent felonies (§§ 667.5, subd. (c)(9), 1170.12, subd. (b)(1)), although defendant did not physically injure any victims, and, unlike the defendant in *Avila*, defendant here *did* make threats, specifically that he had or would pull out a gun. Additionally, while the severity of the defendant's crimes in *Avila* was decreasing, here, defendant remained on a level trajectory, repeatedly committing the same strike offense.

Defendant also relies on *People v. Dryden* (2021) 60 Cal.App.5th 1007, which, the Court of Appeal concluded, "presents that rare instance of an absurd result under the Three Strikes law . . . ." (*Id*. at p. 1031.) In *Dryden*, the charged offenses "resulted from a late-night, spontaneous altercation . . . . Defendant struck two members of a group of five young men with a bamboo stick, scratching one and raising a welt on the neck of the other. Witnesses did not provide a clear picture of the genesis of the encounter . . . ." (*Ibid*.) The Court of Appeal found that the "record does not support the trial court's

conclusion that this nighttime encounter . . . was similar to defendant's prior strikes which . . . were characterized by either substantial violence or the deliberate entry into homes to steal. We recognize, as did the trial court, that defendant has a number of significant prior convictions, but they are not similar to the events underlying this case." (*Ibid.*) Additionally, the defendant had a " 'history of homelessness, mental health issues, and alcoholism [which] most likely contributed to his actions . . . .' " (*Ibid.*)

Here, unlike *Dryden*, four of defendant's five current offenses are the same as his prior strikes. One of the two prior strikes presented a nearly identical fact pattern to the charged offenses, and the other involved defendant brandishing a knife. Additionally, in *Dryden*, the charged offenses involved an unexplained and spontaneous altercation. Here, defendant committed three second degree robberies involving four victims, and attempted an additional robbery, over the course of 11 days.

With regard to the overarching consideration of whether it would be appropriate to strike his prior strike offenses to avoid an unjust sentence, defendant observes that "the Legislature has stated that the 'interests of justice' under section 1385 include ensuring defendants receive proportionate punishment." (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 495.) He asserts that his "current punishment of 110-years to life is disproportionate to the offenses and does not serve the interests of justice, public safety, or the community."

The sentence reimposed by the trial court is a lengthy one. But we cannot find an abuse of discretion. The sentence is long because of the Three Strikes law, to which defendant became subject by committing two prior strikes, and because he was convicted of four counts of second degree robbery and an attempted second degree robbery. "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, . . . the circumstances where no reasonable people could disagree that the criminal falls outside

13

the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra*, 33 Cal.4th at p. 378.)  We conclude that the trial court's decision was not " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Id*. at p. 377.)

III

*Prior Serious Felony Enhancements*

Defendant argues the trial court abused its discretion in declining to dismiss his two section 667, subdivision (a) five-year prior serious felony enhancements given the presence of statutory mitigating circumstances.  According to defendant, the trial court made no finding that releasing him early would endanger public safety, and he asserts it would not.  We again find no abuse of discretion.

A. *Section 1385 and Standard of Review*

"Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).)  In exercising its discretion "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the" statutory mitigating circumstances in section 1385, subdivisions (c)(2)(A) to (c)(2)(I) are present. (*Id*., subd. (c)(2).)  "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid*.)

"We review a court's decision to deny a motion to strike a five-year prior serious felony enhancement for an abuse of discretion." (*People v. Shaw* (2020) 56 Cal.App.5th 582, 587.)  " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing

14

objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Carmony, supra*, 33 Cal.4th at pp. 376-377.)

B. *Additional Relevant Background*

In his motion for recall and resentencing, defendant argued that several statutory mitigating circumstances applied, specifically: "Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745" (§ 1385, subd. (c)(2)(A)); the "current offense is connected to mental illness" (*Id.*, subd. (c)(2)(D)); the "current offense is connected to prior victimization or childhood trauma" (*Id.*, subd. (c)(2)(E)); the "enhancement is based on a prior conviction that is over five years old" (*Id.*, subd. (c)(2)(H)); and, although "a firearm was used in the current offense, it was inoperable or unloaded" (*Id.*, subd. (c)(2)(I)). He also argued that postconviction factors supported the dismissal of the enhancements.

In opposition, the People addressed each of the statutory mitigating circumstances, and further argued that public safety demanded that the trial court deny defendant's request to strike the enhancements. And at the hearing, the People emphasized that the trial court had the discretion to strike the section 667, subdivision (a) enhancements, but argued that, "while it certainly seems [defendant] is gaining insight," his postconviction efforts at rehabilitation do "not demonstrate that public safety would not still be impacted . . . ."

Defense counsel argued that "several of the interest of justice factors apply," and discussed those statutory mitigating circumstances. Defense counsel also raised the "multiple enhancements" mitigating circumstance (§ 1385, subd. (c)(2)(B)), which she had not raised in her briefing. Defense counsel emphasized the requirement that the court give "great weight" to those factors unless the court found dismissal would endanger public safety. She argued defendant was "no longer a risk to public safety."

The People reiterated that the trial court must determine if dismissing the enhancements was in the interest of justice and weigh whether or not public safety would

be endangered.  The People acknowledged the applicability of the mitigating circumstance of the enhancements being based on prior convictions of more than five years old.  (§ 1385, subd. (c)(2)(H).)

The trial court noted that, although the defense had been focused on striking the prior strikes, "the nickel priors are important . . . ."  Ultimately, in reimposing the original sentence, the trial court concluded that, "considering all of the factors in its discretion and interest of justice, it is not going to disturb the sentence that was handed down."

C.     *Analysis*

In reimposing the sentence originally imposed, the trial court did not mention the section 667, subdivision (a) enhancements.  Nevertheless, "[t]he court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  Nothing in this record rebuts this presumption.  To the contrary, the record plainly establishes that the court was aware of defendant's request that the enhancements be dismissed and the grounds on which that request was based.  The motion papers and hearing minutes establish the court was aware of the scope of its discretion in considering the request, including that it gave "great weight" to the statutory mitigating circumstances, that it must consider whether it was in the furtherance of justice to dismiss the enhancements, and that it must also weigh whether dismissal would endanger public safety.  The record establishes that, while the People contested several of the statutory mitigating circumstances, the People conceded that the prior serious felony convictions were more than five years old.  (§ 1385, subd. (c)(2)(H).)

Given the extensive briefing and argument, and the trial court's clear consideration of the matter, we may properly infer the trial court understood its discretion and impliedly found that striking the enhancements would endanger public safety or that, despite giving great weight to applicable statutory mitigating circumstances, striking the enhancements was not in furtherance of justice.  (See *People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045

[in "the absence of an explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed . . . ."].)

Based on defendant's current conviction of four violent felony offenses committed over 11 days, his conviction of two prior violent felony offenses, and the fact that he committed his second prior strike while on probation, we cannot conclude that the trial court's finding that a dismissal of the enhancements would endanger public safety or was not in the furtherance of justice is so irrational or arbitrary that " 'no reasonable person could agree with it.' " (*Carmony, supra*, 33 Cal.4th at p. 377.)

IV

*Updated Actual Custody Credits*

Defendant asserts the trial court erred in failing to issue an amended abstract of judgment updating his actual custody credits. The People agree, as do we. When "a prison term already in progress is modified . . . , the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29; see § 2900.1.) "The sentencing court must determine such time and reflect it in the abstract of judgment." (*People v. Saibu* (2011) 191 Cal.App.4th 1005, 1012 § 2900.5, subds. (a), (d).) Because the trial court recalled defendant's sentence and resentenced him, the court must prepare an amended abstract of judgment to reflect defendant's updated actual custody credits.

17

## DISPOSITION

The order recalling defendant's sentence and resentencing him to an aggregate term of 110 years in state prison is affirmed.  The trial court is directed to prepare an amended abstract of judgment to reflect defendant's updated actual custody credits and to forward a certified copy to Department of Corrections and Rehabilitation.


                                              \s\                    ,
                                          Krause, J.


We concur:


\s\                    ,
Robie, Acting P. J.


\s\                    ,
Mauro, J.